## Anna M. Schnadt et al.

### v.

## Charles W. Davis.

*Opinion filed April 17, 1900—Rehearing denied June 7, 1900.*

1. Masters in chancery—*master's fees are fixed by statute.* The fees which a master may lawfully charge depend upon the terms of the statute, and such statute must be strictly construed.

2. Same—*master's fees for taking testimony are the same throughout the State.* The concluding portion of section 20 of the act on fees and salaries, which concerns masters in chancery in Cook county, does not affect the preceding portion of the section fixing the fee for taking testimony at fifteen cents per hundred words, and such fee is the lawful fee in all counties of the State.

3. Same—*it is the master's duty to reduce testimony to writing and report it.* Under an order of reference to take proof and report the same together with conclusions of law and evidence, it is the duty of the master to cause the witnesses to be brought before him and examined, to have their testimony reduced to writing and to embody the same in his report, together with his conclusions.

4. Same—*master cannot exact additional fees to pay stenographer.* If the master desires the services of a stenographer in taking testimony he must pay for such services himself, and neither the master nor the court has power to order the parties to pay a greater sum than fifteen cents per hundred words for testimony taken, in order to pay for the services of such stenographer.

5. Same—*witnesses should be examined in presence of master.* It is the duty of the master to have the witnesses examined in his presence and to reduce the testimony to writing and report it to the court, and the practice of committing the hearing of testimony to a stenographer and of requiring the parties to present a transcript thereof to the master for his consideration is improper; nor can the parties be compelled to present a transcript of such testimony as a condition to the master's incorporating it in his report.

6. Same—*master cannot arbitrarily fix amount for examining questions of law and fact.* A master in a county of the third class cannot arbitrarily fix his fees for examining questions of law and fact and reporting his conclusions, but before he is entitled to demand compensation it is his duty to have the court determine the amount he should receive, and the parties may be heard upon that question.

7. Same—*hearing on master's fees should be after his report is complete.* The hearing upon the amount to be allowed the master for examining questions of law and fact and reporting his conclusions, in a

county of the third class, should be had after the master has considered the evidence, made his finding and completed his report, so that it may be filed upon payment of his fees.

8. SAME—*master's charge should not be in a lump sum.* The master should make an itemized statement of services rendered and the fees allowed therefor by statute, and if services have been rendered for which the fees are not fixed by statute the report should state such services and the action of the court in the matter of compensation, and should show whether such costs have been paid, and if paid, by whom.

9. SAME—*when record shows that master omitted testimony from report.* That the master omitted testimony from his report, as stated in the objections, sufficiently appears from the record which contains an order requiring the objector to submit a stenographic report of the testimony taken in his behalf, in default of which the master was to make his report from the stenographer's notes submitted to him, and the report, when made, contains no testimony in behalf of the objector, the master's certificate being limited to evidence "submitted" to him.

10. SAME—*exceptions to master's report need not be supported by showing of omitted testimony.* Where the master has omitted testimony from his report under authority of an order of court improperly entered, it is not necessary to the right of the party in whose behalf the omitted testimony was taken to have the report disapproved, that his exceptions to the master's action and report be supported by a showing of the omitted testimony.

*Schnadt* v. *Davis*, 84 Ill. App. 669, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This was a bill in chancery filed by appellee, Charles W. Davis, for a decree foreclosing a certain trust deed executed by appellants, Anna and Frederick Schnadt, to Aaron B. Mead, as trustee, to secure a certain principal note in the sum of $2500, and interest coupon notes attached, signed by said mortgagors and payable to one John L. Healy, the notes, as the bill alleged, having been assigned to the complainant.

The substance of the answer to the bill was, that said Charles W. Davis, the complainant in the bill, and the

said John L. Healy, whose name appears as payee of the notes, are employees of the firm of Mead & Co., and neither has or ever had any real interest in the indebtedness, but Healy, as payee of the note, and Davis, as present holder thereof, are but representatives of the said firm of Mead & Co.; that the said trustee, Aaron B. Mead, is, and was when the note and mortgage or trust deed were executed, a member of the firm of Mead & Co., the other partner in said firm being one Albert L. Coe; that on July 2, 1892, appellant Anna M. Schnadt bought the premises described in the mortgage, being then unimproved city lots, from the firm of Mead & Co., and arranged with that firm for a loan of $2500 wherewith to construct a building on said lots; that said firm agreed to make the loan, but on condition the same should be paid by them to the borrowers in installments, as the work on the buildings progressed; that one A. W. Syratt was then in the employ of the said Mead & Co. as manager of a branch office of the firm; that said branch office was located nearer the home of appellants and nearer the proposed new buildings than was the principal office, and it was arranged the said Syratt should determine the amount that should be paid appellants from time to time as the work on the buildings proceeded, and that the payments to appellants of such installments should be made through said Syratt, on the written order of the appellants; that said Healy was then in charge of the loan department of said firm of Mead & Co., and the note described in the bill was drawn payable to him and signed by appellants, and the mortgage described in the bill was then executed and both delivered to the firm of Mead & Co.; that no money was then paid to appellants, but that the same was to be paid from time to time as the work progressed on the buildings aforesaid; that various amounts were afterwards paid by said Mead & Co. on written orders of appellants, which they executed and delivered to said Syratt, as manager and agent of said

Mead & Co.; that said Syratt forged the names of appellants to orders for payments out of said sum to the amount of $1700, and that appellants did not receive any part of the moneys drawn on said forged orders; that said Syratt, when he forged said orders, was acting as the representative of said firm of Mead & Co., and was in charge of the branch office of that firm; that said Syratt was arrested and indicted for said forgeries and thrown into the jail, and that said Mead, acting for said Mead & Co., represented to appellant Frederick Schnadt that the firm had sustained other heavy losses by reason of the wrongful conduct of said Syratt, and that he wished to conduct negotiations for a settlement for all such losses; that said Mead & Co. did settle with said Syratt, and received notes secured by mortgages on property belonging to relatives of said Syratt to secure the amount of the defalcations and forgeries of Syratt, including amounts received by Syratt on orders to which the names of the appellants had been forged. The answer further averred the appellants had sustained damages by reason of the failure of Mead & Co. to pay them the money as borrowed, etc., in an amount equaling the sums paid them by said Mead & Co., and averred there was nothing due from them on the note. Replication was filed to the answer.

The cause was referred to a master in chancery, with directions to take and report the proofs, together with "his opinion of the law and the evidence." Afterwards, on motion of the solicitor for the complainant, the following order was entered: "Ordered, that the defendants, Anna M. Schnadt and Frederick L. Schnadt, submit or cause to be submitted to Thomas Taylor, Jr., Esq., one of the masters in chancery in this court, a stenographer's transcript of the evidence taken on behalf of defendants before said master on the reference herein, on or before the first day of March, A. D. 1898, and that in default thereof the said master shall make up and return to this

court his report upon the evidence a transcript of which shall have been then submitted to him, and none other."

The appellants filed with the master the following written objections: (The objections were afterward, by agreement of parties, presented to the master's report in the circuit court, the language being changed for that purpose:)

"*First*—The complainant introduced as witnesses in support of his case in this cause Aaron B. Mead, John L. Healy and Henry W. Buckingham, all of whom were examined on behalf of the plaintiff and cross-examined on behalf of the defendants, but upon making up the master's report no part of the testimony of Aaron B. Mead or J. L. Healy has been written up or taken into consideration by the master or reported in this cause.

"*Second*—The defendants offered as a witness in this cause Frederick L. Schnadt and A. W. Syratt, both of whom were examined on behalf of the defendants, and Frederick L. Schnadt was cross-examined at great length by the complainant, such cross-examination occupying two whole sessions before the master, of one-half day each, but no part of such testimony has been considered by the master or is presented in the master's report, or his certificate of evidence filed in this cause.

"*Third*—The only testimony considered by the master and contained in his report is that of Henry W. Buckingham, although four other witnesses testified in this cause before the master.

"*Fourth*—A rule was entered upon the defendants herein to close their proofs before the master at a certain fixed date, and in conformity thereto the defendants appeared before the master and closed their proof, but did not hire a reporter, and complied simply with the order of the master concerning the taking of such testimony, and were not bound to cause such testimony to be written up and submitted to the master, or to pay for the same.

"*Fifth*—The complainant herein having submitted his proofs to Master Taylor for the purpose of having testimony taken on both sides of said cause, and having obtained a rule on the defendants to appear and submit to an examination before such master, is compelled to present all the evidence taken before the master to said master, before the report of the master can be made, and the master is bound to take into consideration, in making up his report, all the testimony taken before him.

"*Sixth*—None of the questions raised by the defendants concerning the forgeries of certain orders for the purpose of fraudulently obtaining money from the said defendants have been considered by the master, although such evidence was submitted to the master."

The objections were overruled by the master. The master filed his report with his conclusions, to the effect there remained due on the note given to Healy, and the interest thereon, $3077.29, and for solicitor's fees the sum of $153.64. The report contains also the following statement: "Master's fee this report, $50." The only deposition returned to the court with the report was that of Henry W. Buckingham, successor to said Healy as manager of the loan department of said Mead & Co., taken in behalf of the appellee. The certificate of the master attached to the report is as follows: "I hereby certify that the pages following this, and which are part of this report, contain all the testimony submitted to me in this cause, and was produced before me by and on behalf of the complainant."

The objections presented to and overruled by the master were, by agreement of the parties and consent of the court, re-filed before the chancellor as objections to the approval of the report, but were overruled and decree entered in accordance with the action of the master. This is an appeal from the judgment of the Appellate Court affirming the decree.

185—31

W. N. GEMMILL, for appellants.

CHARLES H. HAMILL, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Section 39 of chapter 22 of the Revised Statutes, entitled "Chancery," provides a cause may be referred to the master in chancery to take and report the evidence with or without his conclusions thereupon. In the case at bar the cause was referred to the master to take the proof in the cause and report the same, together with his "opinion of the law and the evidence." It was the duty of the master, under this order of reference, to cause the witnesses to be brought before him and examined, to have their testimony reduced to writing and to embody such testimony in his report, together with his conclusions as to the facts established by the testimony and his opinion as to the rights of the parties under the law applicable to that state of facts. "The document exhibiting the referee's or master's findings and conclusions is called his report, the object of which is to show the proceedings which have been had under the order of reference, the evidence which has been taken, and the findings and conclusions reached by the master or referee, according to the terms of the order of reference, in such a manner that intelligent action may be had thereon by the court." (17 Ency. of Pl. & Pr. 1033.) In *Hayes* v. *Hammond,* 162 Ill. 133, we said (p. 135): "In the absence of any statute the master did not report the evidence to the court, and it was necessary for the parties to apply to him for certified copies of such evidence as they might require, relating to matters excepted to; but by our statute the whole of the evidence is reported to the court, and the parties may select from it such portions as are relevant to the exceptions and present them to the court." In *Ronan* v. *Bluhm,* 173 Ill. 277, we said (p. 284): "The cause having been referred to the master to take and report the proofs

and his conclusions on points of law and fact, the proofs taken by the master should have been submitted with his report."

The master to whom this case was referred holds his office by virtue of appointment thereto under the provisions of section 1 of chapter 90 of the Revised Statutes, entitled "Masters in Chancery." Section 9 of said chapter 90 reads as follows: "Masters in chancery shall receive for their services such compensation as shall be allowed by law, to be taxed as other costs." Section 20 of chapter 53 of our statutes, entitled "Fees and Salaries," (Hurd's Stat. 1897, p. 830,) fixes the compensation to be allowed to be charged and collected by masters for their services. Said section 20, so far as it relates to services rendered by the master in this instance, is as follows:

"*Masters in Chancery.*—Sec. 20.—Fees of. * * * For taking depositions and certifying, for every one hundred words, fifteen cents. For taking and reporting testimony under order of court, the same fees as for taking depositions. * * * For examining questions of law and fact in issue by the pleadings, and reporting conclusions, whenever specially ordered by the court, a sum not exceeding ten dollars. * * * And no other fee or allowance whatever shall be made for services by masters in chancery. In counties of the third class, masters in chancery may receive for examining questions in issue referred to them, and reporting conclusions thereon, such compensation as the court may deem just, and for services not enumerated above in this section, and which have been and may be imposed by statute or special order, they may receive such fee as the court may allow."

The fees which masters are entitled to charge for official services in the matter of taking and reporting the evidence are enumerated in said section 20. The concluding portion of the section, which relates to the fees of masters in the county of Cook, that county being of the third class, changes the provision of the preceding

portions of the section relating to the fees to be allowed
for examining questions in issue referred to them and re-
porting conclusions, but in no respect affects the provi-
sions fixing the fees for taking and reporting testimony.
The fees for taking and reporting testimony are the same
in each of the counties of the State, viz., fifteen cents
per hundred words. Said section 20 expressly prohibits
the allowance to masters of any fee or allowance not pro-
vided for in the section. The fees which an incumbent
of the office of master in chancery may lawfully exact
depend upon the terms of the statute, and the rule is that
such statutes are to be strictly construed. (4 Am. & Eng.
Ency. of Law, 314.) "Neither court, jury nor referees can
award costs unless authorized by law, and where the rule
is fixed by statute it must be followed strictly." (4 Am.
& Eng. Ency. of Law, 315.) "It may be safely asserted
as a legal proposition, that fees or costs cannot be al-
lowed or recovered unless fixed by law. * * * A wit-
ness or officer of the law has no legal right to recover on
a *quantum meruit* for services rendered under the require-
ments of the law. For such services he is limited to the
fee or compensation fixed by the statute." *Smith* v. *Mc-
Laughlin,* 77 Ill. 596.

If a master deems it desirable to have the services of
a stenographer to enable him to perform the duty of tak-
ing or reporting the evidence, the services rendered by
the stenographer are to the master, and the stenographer
must look to the master,—not the parties, or either of
them,—for his compensation. The compensation of the
master fixed by the statute for taking and reporting tes-
timony is fifteen cents per hundred words, and no more
can be legally demanded of the parties, or either of them,
for or on account of such services. Nor has the court
power to order the payment of a greater sum or allow-
ance for such service, or to order the parties, or either
of them, to pay any sum to a stenographer for assisting
the master in taking and reporting the proof. If the

court had been clothed with power to order the appellants to procure a transcript of the evidence from the stenographer, there would be force in the contention the amount to be received by the stenographer should have been fixed in the order,—that the appellants should not have been left wholly in the power of the stenographer as to the amount to be paid. The sense of justice is not always strong enough to moderate and restrain the desire for gain. But the stenographer is not an officer of the court, had no legal connection with the court, the master or the case. The law has not fixed his compensation or authorized the court to do so, and the order in its entirety must be reversed.

Counsel for appellee says: "The practice before the master uniformly contemplates the reduction of the testimony to writing by a stenographer. The stenographers do not work for nothing. When a party to litigation calls witnesses and examines them at length, with knowledge that their testimony is to be taken by the stenographer, he must expect that before a master can consider the evidence it shall be presented to him in writing. * * * The master cannot make up his report until the evidence is before him in written form." The duty of a master is to have the witnesses brought before him and examined in his presence. The testimony of the witnesses is presented to the master orally, and is thus before him for consideration. His duty is to reduce it to writing, or have it so reduced to writing, and report it to the court. It would seem from the statements of counsel for appellee it has become the practice of masters in Cook county to commit the duty of hearing the witnesses testify to a stenographer,—not in the presence and hearing of the master,—and of requiring the parties to produce a transcript of the testimony so taken for the consideration of the master, in order he may thereby be informed as to what has been testified to, and consider and weigh the testimony as disclosed by the transcript, and make his

findings from such transcript and use such transcript for his report of the testimony, and that the practice further is to impose upon suitors the burden of compensating the stenographer for doing work which it is the duty of the master to do, and for which the master also collects the full allowance authorized by the statute to be paid for such service. If such practice has obtained it should no longer be tolerated. When the order of reference requires no more than that the master shall take and report the evidence, the evil of the practice is the illegal exaction of the sum of money demanded from suitors as for the compensation of the stenographer, which, if not submitted to, shall, as counsel for appellee contends, be enforced by the denial of a hearing in the courts.

But the practice is fraught with another and not less serious evil when indulged in a case where, as here, the order of reference requires the master shall also make report of his conclusions of law and fact. In order to discharge the duty of arriving at conclusions as to the facts the master should see the witnesses and hear them testify. In 17 Ency. of Pl. & Pr. 1028, it is said: "One of the most important duties and powers of the referee is to hear the parties and such evidence as may be presented bearing upon the issues involved."

The order entered by the court, on the motion of the appellee, that the master should not consider the testimony which had been taken before him in behalf of the appellants unless the appellants should procure and submit to the master a stenographer's transcript of the said testimony, should not have been entered but the motion should have been denied. The action of the master in considering only the testimony of the appellee and forming his conclusions therefrom should not have been approved by the court, but the objections and exceptions in that respect presented to the report should have been sustained. It was the right of the master to demand compensation for taking and reporting the proof at the

statutory rate of fifteen cents per hundred words.  For examining the questions of law and fact and reporting his conclusions thereon the master was entitled to such compensation as the court should deem just,—that is, such amount as the court, upon consideration of such services, should judicially determine to be just and reasonable and should order to be paid.  The master cannot arbitrarily fix upon an amount to be paid him as his compensation for examining questions of fact and reporting his conclusions, but before he is entitled to demand the parties, or either of them, shall compensate him in any sum for such services, it is his duty to have the court determine the amount he is justly entitled to receive for such services.  In the determination of that question the parties are entitled to be heard.  The hearing should be had after the master has considered the evidence, made his finding of law and fact and completed his report, so that it is ready to be filed on payment of the amount the court finds should be paid for such services, for the reason an inspection of the report is necessary to enable the court to ascertain and determine as to the just compensation to be paid the master and by whom it shall be paid.  The course is desirable for the further reason, before the master has acted he is, in a sense, clothed with power to declare judgment on the rights and interests of the parties, and their condition and relation to the master is such they should not then be required to accede to or contest his demands for services to be rendered in the matter of deciding for or against them.  The report in this case as to the fees and charges of the master is as follows:  "Master's fee this report, $50."  This mode of reporting fees and charges can be easily made a cover for illegal and oppressive exactions.  An itemized statement of services rendered, and the fees allowed therefor by the statute, should be made, and if services are rendered for which the fees are not fixed by the statute but are left to be determined by the chancellor, the report

should state such service and the action of the court in the matter of the master's compensation therefor, and also should show whether such costs had been paid, and if paid, by whom.

It is urged it does not appear from the record, otherwise than from the statements in the exceptions to the report of the master, that the witnesses named in such exceptions gave testimony before the master, or that the master did not consider all the testimony produced by the appellants on the hearing before the master. The court, on the motion of the appellee, ordered that the appellants should, on or before a day named, submit to the master a stenographer's transcript of the evidence taken on behalf of said appellants, and that in default of compliance with such order the master should make up and return his report upon the evidence appearing from transcripts of stenographer's notes submitted to him. This order clearly established that the testimony of witnesses produced by appellants had been heard and taken down in shorthand. The master's report contains no testimony taken on behalf of appellants. The certificate attached by the master to his report states, in express terms, the report contained all the evidence "submitted" to him and on which he acted, and that such evidence was that, only, which had been produced by and on behalf of appellee. That the master did not regard the testimony of witnesses taken under the order of reference but not transcribed into longhand as "submitted" and that he excluded such testimony from his report and from consideration, is too clear to admit of doubt or require discussion.

It is urged that the exceptions to the action and report of the master should have been supported by a showing of the testimony on behalf of the appellants which the exceptions allege was erroneously excluded from the report. This testimony had been produced before the master. It was the duty of the master to have embraced it within his report as a proper part of the

record of the cause. It was omitted from the report and excluded from consideration under authority of an order which the appellee procured to be improperly entered. It was enough for the appellants to show that the master had thus omitted the testimony produced in their behalf. On such showing the report should have been disapproved and the master ordered to make report of the testimony produced before him.

The judgment of the Appellate Court and the decree of the circuit court are each reversed, and the cause will be remanded to the circuit court, with directions to deny the motion entered by appellee to require the appellants to procure and submit to the master transcripts of the testimony produced before the master by the appellants, and to take such further proceedings in the cause as to justice and equity shall appertain.

*Reversed and remanded, with directions.*