## Joseph N. Barker, Trustee, et al. v. William Fitzgerald.

1. EQUITY JURISDICTION—*Will Give Affirmative or Defensive Relief.*—A court of equity will give appropriate affirmative or defensive relief, as may be required by the circumstances, from the consequences of any mistake of fact, which is a material element of the transaction concerning which relief is sought, and which mistake is not the result of the mistaken parties' own violation of some legal duty, provided that no adequate remedy can be had at law.

2. MISTAKE—*A Mental Condition.*—A mistake is always a mental condition or conception. This may be either active or passive. When active, the mental condition or belief may be that a certain matter or thing exists which really does not exist, or that a subject-matter or thing existed at some past time, which did not really exist.

3. SAME—*Must Be Material to Transaction to Entitle a Party to Relief.*—A mistake, to entitle a party to relief on account thereof, must be material to the transaction, affecting its substance, and not merely one of its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. To warrant a rescission the evidence of this must be clear and positive.

4. SAME—*Only Reasonable Diligence Required.*—While reasonable diligence is required of all parties in the transaction of business, it is not enough to prevent relief, in case of a mutual mistake, that the party complainant might, had he done all within his power, have ascertained the truth.

5. RESCISSION OF CONTRACTS—*Condition of Affairs Must Be Such that a Substantial Restoration Can Be Made.*—In order to entitle a party to a rescission of a contract on the ground of a mutual mistake, the condition of affairs must be such that a substantial restoration can be made.

Bill to Cancel a Lease.— Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 30, 1903.

This is an appeal from a decree of the Circuit Court canceling a certain lease upon terms and conditions stated in the decree. The testimony taken in the case and embraced in the record here presented is very voluminous. From the report of the master to whom the cause was referred it appears that November 1, 1892, Joseph N. Barker, as trustee, Carrie L. W. Hoops, and Charles H. Hoops, executed a lease of the premises known as 167 and 169 Wa-

Barker v. Fitzgerald.

bash avenue to William Fitzgerald for the term of ninety-nine years, beginning October 1, 1892, at a rental of $15,000 per annum. The lease contains a recital that lessors, in consideration of rents and $25,000 to be expended by the lessee in adding two or more stories to present building and improving same to the extent of that sum, and in consideration of the covenants on the part of the lessee, leased unto him the premises for the term mentioned. The lessee covenanted that he would within two years from May 1, 1893, expend the sum of $25,000 upon the premises, by adding thereto two stories upon the building then situated upon 167 and 169 Wabash avenue, and in other betterments and improvements of the then existing building, the plan for such improvements to be submitted and to be made reasonably satisfactory to the lessor; and that when the said additions and improvements should be made, they were to inure to the benefit of and become the property of the lessors, and should be made at the cost of the lessee, free from all mechanics' and other liens on said premises.

The master further reported that early in 1894, the lessee had plans of the two additional stories required by the lease, which plans were submitted to the lessors, but were not carried out by the lessee, because his investigation had satisfied him that the existing walls and foundations of the building would not carry two additional stories, unless the walls and foundations were reinforced and strengthened, to do which, he contended, would cost, including the two extra stories, a very large sum of money, in excess of the $25,000 which he had agreed to expend in putting on the two additional stories and other betterments of the building.

The master further found that the building in question, owing to the condition of the walls and foundations as the same existed at the time of the making of the lease, would not, with safety, have admitted of the construction of the two additional stories required by the lease; that the existing walls and foundations would not have carried the two

additional stories contemplated by the lease, without a large expenditure of money, in changing and strengthening the walls and foundations, and that said necessary work would to a great extent have changed the method of the construction of the building by requiring additional walls and foundations and interior supports, and that the adding of the two additional stories, including the necessary changes and work of reinforcing the walls and foundations, could not have been done for $25,000.

The master found that both Barker and Fitzgerald were mistaken as to the condition of the building, its walls, foundations and supports; that Barker, in negotiations leading to the lease, expressed himself as entertaining no doubt that the building would carry the two additional stories, which opinion he doubtless at that time honestly held, and which opinion unquestionably was an important factor in the mind of Fitzgerald and tended largely to influence him in the making of the lease.

The master found that there was a mutual mistake of fact by the parties as to the strength of the building and the sufficiency of the existing walls and foundations to carry the two additional stories, and that such mistake of fact was largely induced on the part of Fitzgerald by the statements of Barker honestly made.

The master found that in conversation between Barker and Fitzgerald, prior to the making of the lease, both agreed in the opinion that Fitzgerald could not afford to pay the rent agreed upon, unless two additional stories were added to the building so as to produce a larger income for the lessee; that in such conversation it seems to have been taken for granted by Barker that the construction of the building was such as to warrant the placing thereon of two additional stories without further or other cost than such as would be caused by the construction of those stories and without reinforcing or strengthening the existing walls and foundations. As to this the master found that Barker was mistaken and concludes that in his judgment there was in law no such misrepresentation made by

Barker or any of the lessors as to existing facts relating to the strengthening or condition of the foundation or the walls of the building which Fitzgerald had a right in law to rely upon when he made the lease in question, because the master finds that whatever was said by Barker or any of the lessors as to this matter must be held in law to have been the expression of their opinion relative thereto.

Upon the hearing of the cause it appeared that after the making of the lease in question an ordinance of the city of Chicago was enacted by which Fitzgerald and all other persons were forbidden to increase the height of such a building, unless it was converted into a fire proof structure, a thing which, without a complete reconstruction of the entire building, it was practically impossible to do. The court did not altogether agree with the master, the chancellor finding upon the submission of the master's report to him, that the lease in question was executed under a mutual mistake by the parties as to material facts and that but for such mutual mistake the parties would not have executed the same; and in consequence of such mutual mistake, the minds of the parties never met, and the lease never became the agreement of the parties, and should, as a matter of equity, at the instance of the complainant, be rescinded, canceled, set aside and for naught held, and be treated in all respects as if it had never existed. The chancellor further found that the subject-matter of the lease is the real estate described, which can be restored to defendants, and the parties thereto can be placed, by the decree of this court, in substantially the same condition as that occupied by them respectively before the execution thereof; that complainant ought to restore the possession of the premises and pay the defendants a reasonable sum for the use and occupation thereof from the date of the lease, October 1, 1892, up to the filing of the original bill, October 6, 1894, and for a reasonable period beyond that time, to enable the defendants to place the premises in tenantable condition, and to secure tenants therefor, which time the court fixes as March 1, 1895; that the reason-

able amount to be paid by complainant to defendants for such use and occupation the court finds from the evidence amounts in the aggregate to $27,813.87, and complainant should be credited with all sums he has paid to or for defendants, for and on account of his use and occupation of the premises during the period aforesaid, which sum the court finds from the evidence is $17,841.66, leaving a balance of $9,972.21, which ought to be paid by complainant to defendants.

BARKER & CHURCH, CRATTY, JARVIS & LATIMER and CHESTER E. CLEVELAND, attorneys for appellants.

A. B. JENKS, JOHN MAYO PALMER and WILLIAM HOWARD FITZGERALD, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

A court of equity will give appropriate affirmative or defensive relief, as may be required by the circumstances, from the consequences of any mistake of fact which is a material element of the transaction concerning which relief is sought, and which mistake is not the result of the mistaken party's own violation of some legal duty, provided that no adequate remedy can be had at law.

A mistake is always a mental condition or conception. This may be either active or passive. When active, the mental condition or belief may be that a certain matter or thing exists which really does not exist, or that a subject-matter or thing existed at some past time, which did not really exist. Pomeroy's Eq. Jurisprudence, Sec. 852–854–856; Grymes v. Sanders et al., 93 U. S. 55–60; Hurd v. Hall, 12 Wis. 125–138; Haven v. Foster, 9 Pickering, 112.

The mistake found by the master and the court in the present case was that a certain condition then existed which did not exist, namely, that the walls and foundations of the building were then sufficiently strong to admit of the placing of two stories thereon. A mistake, to entitle a party to relief on account thereof, must be material to the transac-

tion, affecting its substance and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. To warrant a rescission the evidence of this must be clear and positive. Ewing v. Sandoval Mining Co., 110 Ill. 290; Kerr on Fraud and Mistakes, 408; Grymes v. Sanders, *supra;* Carpmael v. Powis, 10 Beav. 36–44.

While reasonable diligence is required of all parties in the transaction of business, it is not enough to prevent relief, in case of a mutual mistake, that the party complainant might, had he done all within his power, have ascertained the truth. Kelly v. Solari, 9 Meeson & Welsby, 54; Bell v. Gardiner, 4 Manning & G. 11; 4 Scott's New Reports, 621; Newton v. Tolles (N. H.), 9 L. R. A. 50.

In the present case it has been found by the master and the chancellor, and it clearly appears from the evidence, that the lease in question would not have been made had not all the parties thereto believed that the walls and foundations of the building were then strong enough to permit the placing thereon of two additional stories. By the placing of these stories Fitzgerald expected that the rentals of such building would be so increased that he could afford to pay $15,000 per annum rent, and there is evidence tending to show that both Barker and Fitzgerald expressed the opinion before the lease was made that without such additional stories, Fitzgerald could not pay $15,000 per annum rent. It was made a condition of the lease that such additional stories should be placed upon said building, all of which was at the expiration of the term to become the property of the lessors. Appellant forcibly asks, if Fitzgerald and Barker believed that the walls and foundations of the building were strong enough to support two additional stories, and if but for such mistaken belief the lease would not have been made, how it happened that such alleged vitally essential condition to the making of a valid and enforceable contract was not inserted in the lease. A similar question might be asked in every case wherein a rescission of a contract is sought upon the ground of a

mutual mistake as to a material matter concerning the sub-
ject-matter of the contract.   In the illustrations most fre-
quently given in text books dealing with this question, that
of the sale of a ship at sea not existing at the time of
the making of the contract, in such case had the con-
tract provided that it was to be null and void in case
the ship was thereafter found not to have been existing
when the contract was made, no suit would have arisen.
It is perhaps the case that parties never, in the making of a
contract, provide for everything then existing but which
if first ascertained thereafter may materially affect the
obligation of the parties.   As before stated, it does not
follow that every mutual misunderstanding or mistake as to
the subject-matter of a contract will authorize its rescission.
The vital question in this matter is :   First, was there a
mutual mistake as to the condition of the walls of the build-
ing; second, was such a mistake so material to the making
of the contract, such an inducement to its execution, that
but for it the contract would not have been made.   A read-
ing of the lease, the written evidence of what the parties
agreed to, with the deduction to be drawn from this evi-
dence, tends strongly to the conclusion that but for the
mutual understanding of the parties that the walls of the
building were strong enough to support two additional
stories thereon, the lease would not have been entered into.

It is true that by the decree, the building, in the condition
in which it was at the time of the execution of the lease,
is not and can not be restored to appellants.   None of the
tenants then occupying it were there at the entry of the
decree; the rent roll is variant; the rental value of the
building is not the same.   Under a receiver appointed either
by mutual agreement or without dissent, substantial
changes and alterations have been made in the structure.
Nevertheless, it appears that by the restoration of the
building, and a money decree in connection with rents
heretofore received by appellants, they are placed in
substantially the position they were when the lease was
made.   In the case of the rescission of a sale of improved

premises, there can never be a perfect restoration, line for line and corner for corner. The premises when restored are altered; they have suffered the decay incident to time and exposure. There may have been decline or rise in value; the property may have become more or less desirable. The character of the occupation for renting purposes which its situation demands may have greatly changed. As to all these things, there can not be a complete restoration of the *statu quo*, nor does equity demand it. In such a case a court of equity having come to the conclusion that the party complainant is entitled to a rescission, endeavors to put the parties in the condition they would have been, had not, by reason of their mutual mistake, the contract been entered into; and as before stated, in order to entitle a party to such rescission the condition of affairs must be such that a substantial restoration can be made. Neblett v. Macfarland, 92 U. S. 101–103.

That there was a mutual mistake as to the condition of the walls and foundations of the building, and that but for such mistake the lease would not have been made, as well as that this mistake was as to a material and important matter affecting the substance of that concerning which the contract was, and the contract itself, there was such evidence that we ought not to overturn the conclusions of the chancellor upon the facts in dispute. The evidence of mutual mistake is clear. A case of a mutual mistake of fact as to a material matter affecting the substance of a transaction affords grounds for an application by either party for a rescission. It may, therefore, be well to consider whether the lessors could have had a rescission had they so applied.

If the lease' had been for one hundred dollars per annum, and it appearing, as from the evidence it fairly does, that the placing of two more stories upon this structure, already seven stories high, would have greatly endangered the entire building and perhaps completely ruined it, appellants would probably have applied to have the contract rescinded, saying that the contract permitting, nay, requiring the placing of two additional stories thereon would never have been made had not both parties been, when the con-

tract was entered into, mistaken as to the strength of walls and foundations. To this, what reply, under the evidence and findings in this case, could Fitzgerald have made? Would a court of equity, having before it the record of this case, allowed him to go on and break down the building by the weight of the additional stories he had contracted to place thereon? The record does not show such laches upon the part of appellee in calling for a rescission as forbids relief to him.

An objection is made to the allowance of fees to the master. The court allowed to the master the statutory fees for taking testimony. It appears that by agreement the parties employed a stenographer, and paid him fifty cents a page for reporting the testimony. Thus the master was saved the labor of writing out the testimony. No portion of the fifty cents per page was received in any way by the master. Notwithstanding that the master did not have to write down the testimony, he had to listen to it, examine and certify to the correctness of every word transcribed by the stenographer or change the same to correspond with the actual testimony. That done by the parties was not at the master's request and was doubtless a great saving to the parties in the way of time and solicitor's fees.

The instance is entirely unlike that commented upon in Schnadt v. Davis, 185 Ill. 476.

We see no reason for interfering with the order of the court as to costs. The decree of the Circuit Court is affirmed.

Mr. Justice BURKE took no part in this case.