# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1924.

---

Edward F. Dunne, sole surviving Trustee of the Estate of John S. Cooke, Deceased, Appellee, v. Charlotte H. Cooke et al., on appeal of George J. Cooke, Appellant.

## Gen. No. 28,625.

1. TRUSTS—*reasonableness of allowance to testamentary trustee for compensation.* An allowance of $9,000 for compensation to the sole surviving testamentary trustee, out of an estate of $165,000, is not excessive where it appears that the administration of the estate was difficult and the responsibilities of the trustee great, that he acted in good faith, that because of ambiguity in the will and the conflicting and antagonistic attitude of some of the beneficiaries protracted and bitter litigation resulted, and that the amount is reasonable under all the circumstances within the meaning of Cahill's Ill. St. 1923, ch. 148, ¶ 35, the services being of greater monetary value than the amount allowed.

2. TRUSTS—*reasonableness of allowance for trustee's solicitor's fees.* An allowance to a testamentary trustee of $7,500 for his solicitor's fees is not unreasonable and excessive where it appears that the legal services rendered by the solicitor in question were of greater monetary value than the sum allowed, that he represented the trustee through protracted and bitter litigation involving the construction of an ambiguous provision of the will, and the amount is not disproportionate to the total value of the trust estate.

(281)

3. APPEAL AND ERROR—*general remanding order without specific directions not conclusive of specific question.* The order of the Appellate Court on an appeal involving the right of a testamentary trustee to an allowance for fees for his solicitors, finding that the costs of the litigation should be borne by the estate and remanding the cause generally without specific directions as to any allowance for services rendered by one of the solicitors during latter phases of the litigation, is not conclusive of the right of the trustee to an allowance for such solicitor's services.

4. TRUSTS—*when testamentary trust estate not chargeable with trustee's solicitor's fees.* A trust estate is not chargeable with the trustee's solicitor's fees where it appears that the services of the solicitor in question, although rendered in litigation resulting from the filing of a bill by the trustee for construction of an ambiguous clause of the will creating the trust, for permission to resign and for allowances for compensation for services and solicitors' fees and for expenses, were not rendered in connection with the branch of the litigation involving construction of the will, but were confined to the presentation of the trustee's claim for remuneration and expenses.

5. TRUSTS—*reasonableness of allowance to trustee for master's fees.* Allowances for master's fees were properly made to a testamentary trustee and charged against the estate where the evidence showed that the services were rendered by two successive masters in protracted and bitter litigation arising out of the administration of the trust estate on the filing of a bill by the trustee to construe an ambiguous provision of the will and that the allowances were fair and reasonable, but it was error to allow an item for numerous continuances had upon the motions of the parties.

Appeal by defendant from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1923. Reversed and remanded with directions. Opinion filed January 22, 1924. Rehearing denied February 4, 1924.

**Statement by the Court.** This is an appeal by George J. Cooke from a decree of the circuit court of Cook county, entered January 16, 1923, wherein complainant, Edward F. Dunne, as surviving trustee of the estate of John S. Cooke, deceased, is authorized to withdraw and retain from the trust funds in his hands $19,500, as follows: $9,000 for his reasonable compensation as trustee (less $2,000 heretofore with-

drawn on account of his fees and expenses under order
of court); $7,500 as reasonable compensation for his
attorney and solicitor, William A. Doyle; and $3,000
as reasonable compensation for his solicitor, Joseph
J. Thompson (less any amount heretofore paid or
retained under order of court). It is further decreed
that the fees of Granville W. Browning, master in
chancery on the first reference, be fixed at $2,325.67;
that the fees of Louis J. Behan, master in chancery
on the second reference, be fixed at $1,550.55; that all
costs of all proceedings in the cause, including said
masters' fees, be paid out of the trust funds, and,
together with said allowances to the trustee and his
solicitors, be made a first and prior lien upon the real
estate of the estate until paid; that Edward F. Dunne
be permitted to resign as trustee after all said allow-
ances, costs and charges are paid; and that all the rest
and residue of the trust property be turned over by
him to whomsoever the court may appoint or order.

This is the second time that the cause has been be-
fore this Appellate Court. An appeal was taken from
a former decree, entered June 5, 1913, wherein com-
plainant was awarded $30,000, payable out of the
funds of the estate, as compensation for his services
as trustee and those of Doyle and Thompson, divided—
$15,000 for complainant's services, $12,000 for Doyle's
services and $3,000 for Thompson's services. Master
in Chancery Browning was allowed $2,500 for his serv-
ices and $500 for the services of a stenographer. In
January, 1916, said former decree was reversed and
the cause remanded "for such proceedings as equity
and justice may require, consistent with the views ex-
pressed" in an opinion then filed. (*Dunne v. Cooke,*
197 Ill. App. 422, 445.) In the published opinion
(pp. 424 to 438) there is a full statement of the facts
as disclosed from the evidence introduced before Mas-
ter Browning on the first reference.

John S. Cooke died testate at Chicago on March 12,

1899, leaving him surviving Charlotte H. Cooke, his widow, Charles F. Cooke, George J. Cooke and John R. Cooke, his sons, and Irene Welch, his daughter, as his only heirs at law and next of kin, all of whom were then of legal age. By the will John M. Smyth and Edward F. Dunne were named as executors, and they qualified as such when the will was probated; they also were named as trustees and they accepted the trust. They were discharged as executors and the estate was closed in the probate court on July 27, 1906, at which time they were allowed and paid, as compensation for their services as executors, the sum of $6,000. By the second clause of the will, the widow, Charlotte H. Cooke, was bequeathed all of the personal property, except the stock of the testator in the Cooke Brewing Company and the Ara Glen Mineral Water Bottling Company. By the third clause all of the real estate was devised to the trustees, in trust, for the sole use and benefit of the widow during her life, and after her death for the use and benefit of said children. By the fourth clause, over which disputes arose, all of the testator's stock in said two companies was bequeathed to the trustees, in trust, to secure to the widow a yearly income of $7,500 during her life. And it was provided that if the net yearly income arising from the real estate and the sale of any of the personal property bequeathed to the widow should amount to $7,500, then the stock in said "corporation" should not be charged with the payments of the widow's annuity, but that if during any year of the widow's life the income from the real estate and the sale of her personal property should be insufficient to make up said amount of $7,500, then the deficiency should be made good from the dividends on the stocks in said "companies" and should be a charge upon said stocks until the same was paid. It was further provided that the trustees, or the survivor of them, should hold said stock in said corporation for the term of seven years from the

testator's death, for the use and benefit of said children, subject to the charge in favor of the widow's said annuity; and that during said period the management of said corporation, so far as the testator's stock could control the same, should be placed jointly in the hands of said three sons; and that at the end of said seven years the trustees were directed to convey the testator's stock in said companies, subject to the charge in favor of the widow's annuity, to said children, share and share alike. The third and fourth clauses of the will are set forth in full in said published opinion (pp. 425-426).

At the end of the seven-year period the beneficiaries demanded that the trustees convey said stock to them, in accordance with the provision of the will last above mentioned, but the trustees refused so to do, maintaining that it was their duty to hold the stock during the life of the widow to secure the payment of her annuity. On November 30, 1906, the attorney for some of the beneficiaries, apparently with the approval of all of them, wrote a letter to William A. Doyle, attorney for the trustees. The letter is set forth in full in said published opinion (pp. 429-431). It is stated therein that, in the writer's opinion, it is the present duty of the trustees to turn over said stock to the children and that the widow desires this to be done. Mention is made of the dispute as to whether under the terms of the will such is the trustees' duty. As to the matter of compensation, it is stated that two of the beneficiaries insist that the trustees are not entitled to any compensation as trustees, as they had already been compensated amply for their services as executors, and that the writer "cannot lose sight of the decisions holding that trustees must act without compensation, and are not allowed compensation unless the document under which they are made trustees provides for compensation," and must "de-

cline the task of attempting to agree upon an amount" for said compensation. It is further stated:

"In the long run it would be better to have the matter submitted to some regularly constituted tribunal. To accomplish this, *you might file a bill asking for a construction of the will, and have the question of trustees' fees adjudicated.* * * * If you will file such a bill as I suggest within the next week, I will be glad to enter the appearance of my clients and bring the matter to a speedy end. If you decide not to file the bill, then I shall feel free at the end of next week to file a bill on behalf of Mrs. Welch and Mr. John R. Cooke. Finally, I may say that I am convinced that the stock must be turned over without delay, *and without compensation being allowed,* or the bill in equity must be filed."

On December 5, 1906, five days after the above letter was written, the trustees filed the present bill against the beneficiaries, in which it was alleged that the testator at the time of his death was the owner of 1,498 shares of the capital stock of the Cooke Brewing Company, of the total 2,000 shares, having a par value of $100 per share; that the stock had been bequeathed to them as trustees, as had been devised certain real estate, for the uses and purposes set forth in the will; that certain beneficiaries had demanded that their proportionate part of the stock be transferred to them; and that the trustees were in doubt whether such transfer should be made or said stock be continued to be held in trust by them during the life of the widow for her benefit and as security for her annuity of $7,500. The bill prayed (1) for a construction of the will, particularly the 4th clause, (2) that the trustees be permitted to resign their trust and another trustee or trustees be appointed, and (3) that an allowance be made to them as compensation for their services and also for those of their attorney, Doyle, and for necessary and incidental expenses.

Certain amendments to the bill were made and answers filed to the bill as amended. During the progress of the litigation several supplemental bills were filed by the surviving trustee and put at issue.

The cause was referred to Master Browning on June 3, 1908, before whom it was pending for more than four years and much oral and documentary evidence was introduced. Before the reference, in April, 1908, the death of Irene Welch was suggested and new parties were made defendants. While the cause was pending before Master Browning, William A. Doyle, on July 29, 1908, withdrew as solicitor for the trustees and Joseph J. Thompson was substituted. In November, 1909, the death of John M. Smyth, one of the trustees, was suggested. In January, 1911, suggestion was made of the death of John R. Cooke, one of the testator's sons, and new parties were made defendants. Master Browning's report was filed on December 5, 1912, and the former decree of June 5, 1913, was in substantial accord with his findings and recommendations. Some of his many findings were in substance that since the death of John M. Smyth, complainant has continued to act as surviving trustee; that Smyth, during his lifetime, and his representatives after his death, have stated that they desired no compensation to be paid for his services as one of the trustees; that the will is ambiguous in its terms and such ambiguity justified the filing of a bill for its construction; that the real estate should be held in trust during the life of the widow to insure the payment of her annuity of $7,500; that the 1,498 shares of stock should also be held in trust during her life to make up any deficiency in the income from the real estate, etc., and to insure the payment of her annuity; that said stock has never been divided but still is held intact by the surviving trustee; that because of the terms of the will and because of the violent quarrels between the children of the deceased, and particularly between

Charles F. and George J. Cooke as to who should act as president of the Brewing Company, the valuable and thriving business of that company so declined that the plant and business finally was sold for $160,000, and the proceeds of the sale used to pay its debts; that because of said quarrels and certain litigations commenced by George J. Cooke and others against the trustees, they were obliged in 1904 to employ, and did employ, William A. Doyle, an attorney, to advise and assist them in the conduct of the affairs of the estate; that subsequently all the beneficiaries became hostile to the trustees and the trustees filed the present bill; that the cause was earnestly contested before the master, particularly on the question of the allowance of any compensation to the surviving trustee, and that he employed, in 1908, Joseph J. Thompson, an attorney, in the prosecution of the present action. As to the services of the surviving trustee and Attorney Doyle, many specific findings are made, setting forth in detail the great amount of time expended by both and the annoyances and responsibilities involved. The work of Attorney Thompson in prosecuting the cause in behalf of the surviving trustee is also set forth.

After the reversal of the former decree, the mandate was filed in the circuit court during April, 1916, and it was ordered that the cause be redocketed. Subsequently appellant moved for the vacation of the order, and in February, 1918, a new redocketing order was entered, and the cause was referred, without objection, to Master Behan. Much additional testimony was taken before him. In complainant's behalf, certain real estate experts and Charles F. Cooke testified as to the value of the real estate belonging to the trust estate, and complainant, Doyle and Thompson further testified as to their respective services. Appellant testified in behalf of defendant, Master Browning tes-

tified as to his services and fees, and certain testimony taken on the first reference was introduced.

In September, 1918, complainant asked leave to borrow, $8,000, pledging certain property as security, for the purpose of redeeming certain real estate from tax sales and paying expenses, commissions, etc., and also $200 for complainant's fees in the matter and $250 for solicitor's fees. In October, 1920, the death of the testator's widow, Charlotte H. Cooke, was suggested. In November, 1920, the court ordered complainant to pay Thompson $500 on account of solicitor's fees. In June, 1922, complainant was allowed to withdraw from the trust funds $1,500 for compensation as trustee, and, it appearing that Master Behan's report was ready for filing, his fees as master were fixed by the court at $1,550.55.

On July 14, 1922, Master Behan's report was filed. After mentioning the entry of the former decree, its reversal by this Appellate Court and the second reference to him, the master stated that "the personal property of the estate having long since been disposed of, the construction of the will in regard thereto is not material to the remaining questions, and the issues for the master to determine were confined, therefore, to the compensation and expenses of the trustee, and Granville W. Browning, master in chancery." Master Behan made the following findings, among others: (1) That no allowance should be made to the trustees, or the surviving trustee, for services rendered prior to July 27, 1906 (the date of their discharge as executors), for the reason that the services rendered by them, as trustees, prior to said date were not sufficiently distinguished in the evidence from those rendered as executors and for which they had received compensation; (2) that the trust estate consists of real estate in Cook County, Illinois, and in Walworth County, Wisconsin, and of cash realized from the sale of certain real estate; that the value of the Cook

County real estate is $64,500, and of the Wisconsin real estate $41,000; that the cash in complainant's hands is $60,000, less sums disbursed under order of court; and that the aggregate value of the trust estate at the present time is $165,000; (3) that John M. Smyth, one of the trustees, waived any claim for compensation for services which he may have rendered as trustee; (4) that since July 27, 1906, complainant, as trustee, has rendered services in performance of duties imposed by the will, for which he should be allowed $9,000, although said services "are of a greater monetary value than the amount recommended, and would have been set at a higher figure were it not for the fact that in the opinion of the master any higher amount would bear an unreasonable relation to the value of the trust estate at the present time"; (5) that since July 27, 1906, William A. Doyle has rendered legal services to the trustees, for which he should be allowed $7,500; that while this amount does not represent the true value of the services rendered by him, the master "is constrained to limit the allowance to a sum which in his opinion bears a reasonable relation to the value of the trust estate"; (6) that Joseph J. Thompson was employed by complainant to represent him, as surviving trustee, "in the matter of having the trustee's claim for remuneration and expenses presented and passed upon by the court," and that he (Thompson) has rendered legal services in the former hearing before Master Browning, as well as before the circuit and appellate courts; that after the reversal of the former decree he continued to represent complainant; that his services so rendered "were necessary and proper"; and that as a reasonable fee he should be allowed $4,500.

To this report complainant and appellant, respectively, filed objections, which were overruled, and the same were ordered to stand as exceptions. The court, in the decree now in question, confirmed the report,

except as modified, and overruled all exceptions, and found, *inter alia*, that the value of the individual trust estate was substantially the same as found in the report; that there remained in the hands of the Cooke Brewing Company real estate worth not less than $31,220, of which the beneficiaries were entitled to a three-fourths interest, after paying expenses; that the corporate property of the Brewing Company was during the first ten years of the trusteeship very valuable, that 1,498 shares of its capital stock of 2,000 shares belonged to the trust estate, that during said ten years the book value of the stock increased until it reached $333 per share, that three million dollars' worth of the product of the company was sold during the trusteeship, that dividends on said 1,498 shares, aggregating $200,000, were paid, through the trustees, to the beneficiaries, as were also salaries aggregating $175,000, and that the brewing plant was sold during the trusteeship for $160,000, which was all expended for debts of the Brewing Company. The court confirmed the allowance for fees, as recommended by the master, of $9,000 for complainant's services and of $7,500 for Doyle's services, but reduced the allowance for Thompson's services from $4,500 to $3,000. Complainant has assigned cross errors because of the action of the court in making this reduction.

Mary Lee Colbert and Charles H. Pease, for appellant.

Joseph J. Thompson, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

Formerly it was the law of this State, following the rule in England, that a trustee appointed by a will was not entitled to compensation for his services in the absence of any provision in the will authorizing the same. (*Cook v. Gilmore,* 133 Ill. 139, 143; *Buck-*

*ingham v. Morrison,* 136 Ill. 437, 455; *Arnold v. Alden,*
173 Ill. 229, 235.)   But in June, 1891, an act was
passed by the legislature entitled "An Act concerning
compensation of trustees," providing "that where a
trustee or trustees shall hereafter act under any power
or appointment given or created by any will, testa-
ment or codicil, and in such will, testament or codicil,
except in case of trusts for charitable, religious or
educational purposes, shall be contained no provision
respecting the compensation to be allowed or paid
such trustee or trustees, a reasonable compensation
may be charged and allowed, demanded and collected
therefor."   And in June, 1913 (Laws 1913, p. 1), said
act was amended by adding the following words:
"The exception in this Act, in regard to trusts for
charitable, religious or educational purposes, is in-
tended to apply only to trustees 'of charitable, reli-
gious or educational institutions and not to the trustees
created by any will, testament or codicil.   The county
court of the county where the will was admitted to
probate or the circuit court of such county, in case
such court shall take jurisdiction of a trust estate,
may allow a reasonable fee to such trustee or trustees
so created by will, testament or codicil where com-
pensation is not expressly forbidden by the terms of
the will, testament or codicil.' "   The act, as amended,
is still in force.   (Cahill's Ill. St. 1923, ch. 148,
¶ 35.)   The will in question contained no provision, re-
specting the compensation of the trustees named
therein, and compensation to them was not expressly
forbidden therein.

Counsel for appellant state in their printed brief
and argument that "the errors assigned herein relate
directly or indirectly to the allowance of fees to the
trustee and his solicitors and to the master in chan-
cery, and the taxation against the trust estate of costs
incurred since the former appeal, and we respectfully
insist that the amount allowed in favor of the trustee

and each of his solicitors is excessive, and that a large portion of the services, for which the allowances respectively were made, were services for which compensation should not be charged against the trust estate.''

By the former decree of the circuit court, complainant was allowed $30,000 as compensation for his services as trustee and those of his solicitors and attorneys, Doyle and Thompson; and this total amount was divided—$15,000 for complainant's services and $12,000 and $3,000 for the services of Doyle and Thompson, respectively. The decree was reversed by this Appellate Court and the cause remanded (197 Ill. App. 422). In the opinion it is stated in substance (p. 439) that the bill of the trustees (praying for a construction of the will, for leave to resign as trustees and for compensation for their services and those of their solicitor, Doyle) "was not improvidently filed," in view of the sharp conflict of opinion existing between the trustees and the beneficiaries as regards the duties of the trustees under the fourth clause of the will, and in view of the attitude taken by the beneficiaries as disclosed in the letter of their counsel, written five days before the bill was filed; (p. 440) that, although a construction of the will in regard to the personal property is no longer material to the issues because such property of the estate has been disposed of, complainant, as surviving trustee, is entitled to *reasonable* compensation for his services and for his *reasonable* expenses; that in determining such compensation "the responsibility incurred, the amount of the estate, the time and labor properly devoted by the trustee to the discharge of his duties are to be considered," and what is reasonable compensation "depends largely on the circumstances of each case"; (p. 441) that the fact that complainant received compensation as executor does not deprive him, as surviving trustee, of his right to compensation for services rendered as trustee, provided the duties were

separate (citing *Arnold v. Alden*, 173 Ill. 229, 237), yet the circuit court by its findings did not separate or distinguish complainant's services rendered as executor from those rendered as trustee, although the decree finds that the trustees were paid fees of $6,000 as executors; and (p. 442) that while it is evident that the trustees in administering the trust acted in good faith and the question of the amount of complainant's compensation should be determined upon that basis, yet he did not render services to the extent set forth in the long series of findings in the former decree, and a total allowance of $33,000, for complainant's fees and those of his two solicitors and attorneys, including master's fees and a stenographer's fee (p. 443) "is a sum disproportionate to the apparent value of the trust estate at the time of the entry of the decree, regarding the value of which the court below makes no finding," and such total allowance "should bear a reasonable relation to the value of the trust estate," and "due consideration must be given to the rights and interests of the widow, to whom the testator willed an annuity of $7,500 per annum, during her life." This court, in its opinion (p. 444), also briefly stated what were the legal services, as shown by the evidence, rendered by William A. Doyle as attorney and solicitor for the trustees, which covered a period of four years, and further stated (p. 445) that the evidence tended to show that he had discharged his duties "actively and faithfully," but held that "the duties of trustee, however, performed by Mr. Doyle, which were not legal in their character, are not properly chargeable to the estate."

Upon new evidence in accordance with the foregoing opinion, as well as some evidence introduced on the former reference, Master Behan made findings as set forth in the above "Statement by the Court," some of which were in substance that no allowance should be made to complainant, for reasons stated, for his

services or expenses as trustee, rendered or incurred prior to July 27, 1906 (the date of the final discharge of the executors); that the present value of the trust estate was $165,000; that since July 27, 1906, complainant had rendered services as trustee for which he should be allowed $9,000, and should also be allowed $7,500 for the legal services rendered by his attorney and solicitor, Doyle; and that, although the services of each were of greater monetary value, the allowances should be made at such amounts as bear a reasonable relation to the value of the estate. These allowances were confirmed by the court in the present decree. After reviewing the opinion of this Appellate Court on the former appeal, and after considering the testimony of the several witnesses, the ambiguous terms of the will, the attitude of the beneficiaries as disclosed in the letter of the attorney for some of them of November 30, 1906, the attitude maintained by appellant throughout this long and bitter litigation, the value of the estate, the fact that Charlotte H. Cooke is no longer living, and all the facts and circumstances in evidence, we have reached the conclusion that said allowances are reasonable and proper. And in arriving at this conclusion, with particular reference to the allowance for Doyle's services, we have not considered any such services as are not legal in their character.

As to the services rendered by Joseph J. Thompson, it appears that he was first retained by complainant, as trustee, in June, 1908, and thereafter he continuously rendered faithful and efficient legal services for his client in the present litigation. In the former decree complainant was allowed $3,000 for Thompson's services rendered up to that time, and it was contended on the former appeal that such allowance was erroneous. Although this Appellate Court reversed the former decree and remanded the cause "for such proceedings as equity and justice may require, consistent with the views herein expressed," it is stated

in the opinion (p. 445): "It is further contended that the court erred in taxing against the estate the solicitor fees allowed to Joseph J. Thompson, as solicitor for appellee in this proceeding, and that such fee should be paid by the appellee. The costs of this litigation should be borne by the estate." After the second hearing Master Behan found that solicitor's fees in the sum of $4,500 should be allowed for Thompson's services. In reaching this figure it is apparent that the master allowed the $3,000 mentioned in the former decree and added thereto $1,500 for Thompson's services rendered on the former appeal and on the second hearing. The circuit court in the present decree allowed the $3,000, but, evidently, because it was thought that the above-mentioned statement in said opinion was *res judicata* of the question. One of the findings in the decree is that the "Appellate Court affirmed the decree of the circuit court entered at the former hearing allowing the trustee the sum of $3,000" for Thompson's services, and that "such affirmance by the Appellate Court is final and conclusive upon all the parties hereto, and not subject to retrial." But the court did not allow the $1,500 for Thompson's additional services on the former appeal and on the second hearing for the reason, as stated in the decree, that "compensation for such services is not chargeable to or payable from the trust estate," though the court considered that the amount was "reasonable" for the services rendered. We do not think that the statement in said opinion can properly be considered as *res judicata*. While the cause was remanded for further proceedings "consistent with the views herein expressed," the decree was reversed principally because the total allowance of $30,000.00, as compensation for the services of complainant, Doyle and Thompson, was a sum "disproportionate to the apparent value of the trust estate." In other words, the cause was remanded generally and without specific directions. This court did not decide that complainant

should be allowed $3,000 out of the trust estate for Thompson's services as solicitor. In the case of *Dinsmoor v. Rowse,* 211 Ill. 317, 319, it is said: "The rule is, that when a decree or judgment is reversed and the cause is remanded without specific directions, the judgment of the court below is entirely abrogated, and the cause then stands in the court below precisely as if no trial had occurred, and the lower court has the same power over the record as it had before its judgment or decree was rendered, and may permit amendments to the pleadings and the introduction of other evidence, so long as the same are not inconsistent with the principles announced by the court of review and do not introduce grounds that did not exist at the hearing in the court below." And in *Noble v. Tipton,* 222 Ill. 639, 648, it is said: "If, however, the questions involved, or any of them, are not decided upon their merits by this court, and the cause is reversed and remanded to the lower court with directions to proceed in conformity with the opinion of this court, then only the legal principles involved and which have been announced in its opinion by this court will control the lower court in its further consideration of the questions involved in the case which have not been determined on their merits in this court." The question is before us, we think, whether the circuit court erred in allowing complainant any amount out of the trust estate for Thompson's solicitor's fees. The general rule in this State is that "when the testator has expressed his intention in his will so ambiguously as to make it necessary to go into a court of chancery to get a construction of the will in order to determine which of two or more adverse claims to the same fund or property is valid, the costs of the litigation should be borne by the fund or property in question." (*Kendall v. Taylor,* 245 Ill. 617, 621, and cases cited; *Wilson v. Clayburgh,* 215 Ill. 506, 507; *Dean v. Northern Trust Co.,* 266 Ill. 205, 211; *Haight v. Royce,* 274 Ill.

162, 172.) In the present case the bill prayed not only for a construction of the will, but also that the trustees be permitted to resign and that allowances of compensation for their services and those of their solicitor and for expenses be made. As time elapsed the construction of the will became immaterial. It does not appear that Thompson rendered services in that branch of the case relating to the construction of the will, and Master Behan found that Thompson was employed by complainant to represent him as trustee "in the matter of having the trustee's claim for remuneration and expenses presented and passed upon by the court." In the *Kendall* case, *supra,* the bill was not one for the construction of a will but for the partitioning of real estate, and it was held erroneous to allow solicitor's fees out of the funds of the estate. In the *Wilson* case, *supra,* where a beneficiary under a trust created by a will brought suit to have the resignation of the trustee named in the will accepted and a new trustee appointed in his place, it was held that the fees of the solicitor for the beneficiary could not be allowed and taxed as costs. In the *Dean* case, *supra,* it was held that the above-mentioned general rule "should receive a reasonable application." In the *Haight* case, *supra,* it was held that solicitor's fees "should not be charged against the entire estate in every case, as, for instance, in the case of a bill to construe a will the provisions of which are so plain that there could be no question of its meaning." In the case of *Singer v. Taylor,* 91 Kan. 190, 192, where it appeared that an application had been made to the court in good faith to construe a will, but the greater part of the testimony related to plaintiff's unsuccessful contest as to its validity because of alleged undue influence, and the question arose as to whether attorneys' fees should be allowed to plaintiff out of the testator's estate, the court said: "The parties may be able to agree as to the amount of at-

torneys' fees to be allowed to the plaintiff, but in the event that they are not the district court may determine as to the extent of the work done by attorneys in the branch of the case relating to the construction of the will and the value of the services rendered in the district court as well as in the Supreme Court and make an allowance for attorneys' fees payable out of the estate." (See also, *Stevenson v. Stevenson,* 285 Ill. 486, 501.) In view of the foregoing authorities and the facts of the present case, we feel constrained to hold that the circuit court erred in allowing complainant the sum of $3,000, to be paid out of the trust estate, for Thompson's solicitor's fees.

As to the fees of Master Browning on the first reference, the former decree fixed them at $2,500. In the former opinion this Appellate Court said (p. 445): "Further evidence should be heard to determine the extent and value of the master's services, and as to the reasonableness of his fee." Such evidence was presented on the second reference, and Master Behan recommended that Master Browning be allowed as fees the total sum of $2,835.67, made up as follows: (a) statutory fees amounting to $1,710.67 for taking and certifying 11,404½ folios of testimony and exhibits at 15 cents per folio; (b) $725 for 145 continuances at $5 per each continuance; and (c) $400 for services, for which no statutory fee is fixed, in examining the testimony and exhibits, hearing oral arguments and preparing and certifying his original and supplemental report. The circuit court in the present decree reduced the amount, as recommended, to $2,325.67; the item of $1,710.67 was allowed; the item as to continuances was reduced to $435 (145 continuances at $3); the item of $400 was reduced to $120, but, in addition, $60 was allowed for two days' time of the master in hearing arguments on a question of practice, and, upon request, certifying the question and his decision to the court. As to the item of $435

for said continuances, the court found that Master Browning "set said cause for hearing upon 145 different occasions, and that at the times set for such hearings, upon motion of one or the other of the parties or upon agreement, said hearings so set were continued and reset for times certain, and notices of such resetting sent, and that on many such occasions the waiting for lawyers would last one hour or more, whereby the master virtually lost the morning or the afternoon so set for the hearing." After reviewing the evidence heard on the second reference as to Master Browning's services, and considering all the facts and circumstances in evidence, we are of the opinion that the amount allowed by the court, less the item of $435 for said continuances, is proper, and that $1,890.67, as fees for his services, be paid out of the trust estate. We do not think that the allowance for said continuances can be justified in view of the decisions in *Schnadt v. Davis*, 185 Ill. 476; *Fitchburg Steam Engine Co. v. Potter*, 211 Ill. 138, 154, and *Herpich v. Williams*, 300 Ill. 540, 548. As to the including of the exhibits in making up the 11,404½ folios, as testified to by Master Browning, it is said in *Donham v. Joyce*, 257 Ill. 112, 123: "We think a fair and reasonable construction of the statute authorizes the master in chancery to charge fees at the rate of fifteen cents per hundred words for documentary evidence introduced before him in the hearing of a cause under an order of court." Appellant, in his assignment of errors, does not question the amount of the fees allowed Master Behan, but only urges that these fees should not be paid out of the funds of the estate. Under all the facts and circumstances in evidence, we think they should be so paid.

Our conclusion is that the decree appealed from should be reversed and the cause remanded to the circuit court with directions to that court to so modify the decree as not to allow complainant out of the funds of the estate any sum as compensation for the services

of his solicitor, Thompson, and to reduce the amount allowed out of said funds for Master Browning's fees to $1,890.67. In all other respects the decree is affirmed. Each party will pay his own costs in this Appellate Court.

*Reversed and remanded with directions.*

FITCH and BARNES, JJ., concur.